

FILED

**Margaret Botkins**
**Clerk of Court**

4:09 pm, 8/8/25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

PONDEROSA RESOURCES
CORPORATION,

    Petitioner,

vs.

THE UNITED STATES BUREAU OF
LAND MANAGEMENT, ANDREW
ARCHULETA, in his official capacity as
Wyoming State Director for the U.S.
Bureau of Land Management, and THE
UNITED STATES DEPARTMENT OF
THE INTERIOR,

    Respondents;

and,

WESTERN ORGANIZATION OF
RESOURCE COUNCILS, CENTER FOR
BIOLOGICAL DIVERSITY, and
WILDEARTH GUARDIANS,

    Proposed Intervenor-Respondents.

Case No.  1:24-CV-00141-SWS

## ORDER GRANTING CONSERVATION GROUPS' MOTION TO INTERVENE

    This matter is before the Court on the Western Organization of Resource Councils, Center for Biological Diversity, and WildEarth Guardians' (collectively "Proposed Intervenor-Respondents") *Conservation Groups' Motion to Intervene* ("*Motion*"), filed on May 9, 2025. ECF No. 35. Petitioner filed its *Response in Opposition to the Proposed Intervenor-Respondents' Motion to Intervene* ("*Response*") on June 4, 2025. ECF No. 41.

Proposed Intervenor-Respondents filed a timely *Reply to Petitioner's Response to Proposed Intervenor-Respondents' Motion to Intervene* ("*Reply*"). Federal Respondents have not taken a position on the *Motion*. ECF No. 35 at 2. After reviewing the *Motion*, the *Response*, the *Reply*, the applicable law, and being otherwise fully advised, the Court finds that the *Motion* should be **GRANTED**.

## BACKGROUND

Petitioner is a small, privately held company that provides consulting services for oil and gas projects and previously owned a single oil and gas lease on public land in Fremont County, Wyoming. ECF No. 10 at 2. The Bureau of Land Management ("BLM") issued the lease, which covered the Day Butte 1-17 well ("Day Butte well"). *Id.* Petitioner held operating rights and a partial record title interest from 1997 until 2011, when it sold those interests. *Id.* The Day Butte well produced oil and gas until 2014. *Id.* Although Petitioner no longer holds any interest in the well, the BLM ordered it to plug and abandon the well and reclaim the disturbed surface area, which would cost an estimated $300,000. *Id.*

Petitioner asserted it lacked the funds to perform this work and did not comply with the BLM's orders. *Id.* As a result, the BLM imposed an $800,580 civil penalty and initiated enforcement proceedings. *Id.* Petitioner filed this action challenging the BLM's regulation imposing liability on former lessees and operating rights owners, 43 C.F.R. § 3106.7-2(b), arguing it conflicts with Congress's directive in 30 U.S.C. § 187a, and 43 C.F.R. § 3106.7-6(a), and should be vacated. *Id.* at 2–3. Petitioner also claims that the BLM's adjudication

of the civil penalty violates the Seventh Amendment and seeks to enjoin enforcement. *Id.* at 3.

Proposed Intervenor-Respondents seek to intervene in this action to defend the BLM's regulation at 43 C.F.R. § 3106.7-2(b) (the "2001 Rule"), which imposes liability on former lessees and operators for well plugging and reclamation obligations when current owners are unable to perform those duties. ECF No. 35-1 at 2.

Proposed Intervenor-Respondents assert that vacatur of the 2001 Rule, as requested by Petitioner, would significantly undermine the BLM's ability to hold prior owners accountable, potentially resulting in orphaned wells on public lands and shifting financial and environmental burdens to the federal government and taxpayers. *Id.* at 2–3; ECF No. 10 at 17–18. They argue that their organizational mission—to protect and restore public lands, waters, and communities from adverse impacts of extractive industries—would be directly impaired by such an outcome. ECF No. 35-1 at 4, 6. Additionally, they emphasize that their members live, work, and recreate near BLM-managed lands affected by oil and gas development. *Id.* at 3, 6.

On this basis, Proposed Intervenor-Respondents maintain they have a significant protectable interest in the litigation's subject matter. *Id.* at 8–11. They argue this interest may be impaired if Petitioner prevails and that the existing parties do not adequately represent their position. *Id.* at 11–12. Accordingly, they seek intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permissive intervention under Rule 24(b). *Id.* at 1, 16.

## RELEVANT LAW

Federal Rule of Civil Procedure 24(a)(2) governs intervention as a matter of right, and a court must permit intervention as to any party who files a timely motion claiming "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protects its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). The Tenth Circuit "has historically taken a 'liberal' approach to intervention" and has distilled Rule 24(a)(2) into four elements that, if shown, support a party's request to intervene as of right:

> (1) the application is timely; (2) the applicants claim an interest relating to the property or transaction which is the subject of the action; (3) the applicants' interest may as a practical matter be impaired or impeded; and (4) the applicants' interest is not adequately represented by existing parties.

*Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (brackets omitted); *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005) (citation omitted).

Rule 24 also provides for permissive intervention. "On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). "'Unlike Rule 24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 663 (D.N.M. 2017). "'In exercising its discretion, the court must consider whether the

intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Kane Cnty., Utah v. U.S.*, 597 F.3d 1129, 1135 (10th Cir. 2010) (quoting FED. R. CIV. P. 24(b)(3)).

As apparent in the language of Rule 24(b)(1)(B), the analysis of granting permission to intervene is two-fold. First, the motion must be timely. Timeliness is determined "in light of all of the circumstances." *Oklahoma ex rel. Edmondson v. Tysons Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010). These circumstances may include "the length of time since the applicant knew of [their] interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (analyzing the timeliness of a motion to intervene in the context of intervention as of right)). The timeliness analysis is contextual and is not solely a measure of absolute time between the filing of the suit and the motion to intervene or to punish the intervenor, but a tool to protect the original parties. *Id.* (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). A court should not prohibit intervention based on timeliness when there is little harm to the existing parties and greater justice will result. *Id.* Importantly, this analysis must focus on the prejudice caused by delay, not intervention itself. *Id.*

Second, the claim must present a claim or defense that shares a common question of law or fact with the existing action. FED. R. CIV. P. 24(b)(1)(B). This is a requirement shared with many other rules and is not a difficult concept to apply. 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1911 (3d ed. April 2025

update). However, "a filing that 'substantially mirror[s] the positions advanced' by one of the parties [does not] necessarily identif[y] a common question of law or fact." *Kirsch v. Dean*, 733 Fed. Appx. 268, 279 (6th Cir. 2018) (quoting *Bay Mills Indian Cmty. v. Snyder*, 730 Fed. Appx. 754, 757–58 (6th Cir. 2018)) (first alteration in original). "[A] proposed intervenor may not inject itself into a lawsuit under Rule 24(b) where … it has no interest in a factual or legal dispute between the parties, but instead is merely concerned that the resolution of the parties' claims might have collateral consequences for the proposed intervenor's independent interests." *Id.*

## RULING OF THE COURT

### I. Proposed Intervenor-Respondents Motion to intervene is granted as a matter of right.

    *A.    Proposed Intervenor-Respondents' Motion is timely.*

The Court first considers whether the present motion to intervene is timely. "The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n of Cntys.*, 255 F.3d at 1250. This factor weighs the prejudice to other parties caused by the intervenor's delay in seeking intervention. Therefore, the prejudice the Court considers is that "caused by the intervenors' delay—not by the intervention itself." *Id.* at 1251. "[D]elay in itself does not make a request for intervention untimely," and "[t]he other factors in the test for untimeliness must also be considered." *Okla. ex rel. Edmondson*, 619 F.3d at 1235.

6

Proposed Intervenor-Respondents argue their *Motion* is timely because no substantive developments had occurred in the case when they filed the *Motion*. ECF No. 35-1 at 9. The Court agrees. Petitioner filed its First Amended Petition on August 14, 2024. ECF No. 10. Since then, the parties have jointly sought and received multiple extensions of time. *See* ECF Nos. 27–32. Most recently, on June 5, 2025, the Court granted a joint motion to stay the merits briefing deadlines until August 11, 2025. ECF No. 43.

Proposed Intervenor-Respondents also explain that they only recently became aware their interests may be affected by this litigation due to policy changes concerning public lands and extractive industries reflected in several Executive Orders issued in January 2025. ECF No. 35-1 at 9. Given the current stay and the absence of briefing or other substantive proceedings, their intervention at this stage would not prejudice the existing parties. Therefore, "in light of all of the circumstances," and in this Court's discretion, the timeliness standard is met. *Okla. ex rel. Edmondson*, 619 F.3d at 1232.

> B. *Proposed Intervenor-Respondents have an interest in property or a transaction at issue in this action.*

Under Rule 24(a), Proposed Intervenor-Respondents must next show an interest "relating to the property or transaction" in this case. FED. R. CIV. P. 24(a). "The contours of the interest requirement have not been clearly defined," but the Tenth Circuit requires "[the] interest in the proceedings be 'direct, substantial, and legally protectable.'" *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (citations omitted). "A protectable interest is one that would be impeded by the disposition of the action." *Zinke*, 877 F.3d at 1165.

7

"With respect to Rule 24(a)(2), [the 10th Circuit has] declared it indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). This interest is demonstrably stronger where, as here, the conservation groups have a "record of advocacy" for the protection of public lands and "a demonstrated concern for the damage to public lands caused by oil and gas development. *Zinke*, 877 F.3d at 1165. Further, "the conservation groups also have an interest in preserving the Leasing Reform Policy that they spent years negotiating and litigating." *Id.*

Proposed Intervenor-Respondents argue that they have environmental and organizational concerns that constitute legally protectable interests in this case. ECF No. 35 at 9. The Court agrees. Proposed Intervenor-Respondents have long engaged in litigation, rulemaking, and policy advocacy related to the BLM's oil and gas program, including efforts to enforce operator liability for plugging abandoned wells. *See,* Declaration of Taylor McKinnon, ECF No. 35-2 ¶ 6 [hereinafter McKinnon Decl.]; Declaration of Melissa Troutman, ECF No. 35-2 ¶¶ 9, 13 [hereinafter Troutman Decl.]; Declaration of Jeremy Nichols, ECF No. 35-2 ¶¶ 10, 12 [hereinafter Nichols Decl.]. For example, Proposed Intervenor-Respondents submitted comments to the BLM's rulemaking docket supporting the BLM's rule clarifying that assignors remain responsible for reclamation obligations, preventing operators from using lease transfers to evade cleanup duties. Troutman Decl. ¶ 9. They have also advocated for orphaned well reforms under the Infrastructure Investment and Jobs Act. Nichols Decl. ¶ 10; Declaration of Jill Morrison, ECF No. 35-2 ¶ 4 [hereinafter Morrison Decl.]. This demonstrated persistent advocacy for

# ">

public lands management and oil and gas reforms establishes an interest in the litigation and judgment that is direct, substantial, and legally protectable and "relates to the property or transaction which is the subject of the action." FED. R. CIV. P. 24(a).

> C. *Disposing of the action will, as a practical matter, impair or impede Proposed Intervenor-Respondents' ability to protect its asserted interest.*

Rule 24(a)(2) also requires a proposed intervenor to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest. The Tenth Circuit notes "the question of impairment is not separate from the question of existence of an interest." *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir.1978). Moreover, "the Rule refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature." *Id.* "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Utah Ass'n of Cntys.*, 255 F.3d at 1253 (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir.1999)).

Here, that minimal burden is plainly met. Proposed Intervenor-Respondents have long advocated for responsible oil and gas development on public lands, including the enforcement of the BLM's 2001 rule that requires assignors of federal oil and gas leases to remain financially liable for plugging and abandonment obligations unless and until the BLM expressly releases them.[1] If Petitioner prevails in this lawsuit, that regulatory

---

[1] The Tenth Circuit Court of Appeals has reiterated that the BLM's policy and regulations have consistently held that plugging obligations accrue when the well is drilled and operated and are not released or discharged through assignment or sublease. *See Monahan v. U.S. Department of the Interior*, No. 05-8068, 2007 WL 2993577 *14–18. (10th Cir., Oct. 15, 2007).

framework will be upended. ECF No. 10 at 21. Petitioner will not only be able to avoid over $300,000 in cleanup liabilities for the Day Butte well, but the BLM's longstanding interpretation of the 2001 Rule would be invalidated—removing a key tool the agency uses to hold operators accountable. *Id.* at 19–22.

The consequences would be immediate and far-reaching. ECF No. 35 at 3. Without the ability to enforce assignor liability, the BLM could be forced to rely on public funds to manage the growing problem of orphaned wells, which are known to leak methane, emit toxic pollutants, and depress nearby property values. *See* Morrison Decl. ¶¶ 7–8; McKinnon Decl. ¶¶ 23–24. Proposed Intervenor-Respondents' environmental, health, and economic interests would be directly undermined. *See* Nichols Decl. ¶¶ 18–19 (discussing air quality and climate impacts); Morrison Decl. ¶¶ 7–8 (discussing health threats from toxic emissions); McKinnon Decl. ¶¶ 23–24 (discussing economic harms to property owners); Troutman Decl. ¶¶ 15–16 (discussing burden shifting to taxpayers).

Under Tenth Circuit precedent, such a concrete and plausible threat of harm is more than sufficient to meet the impairment prong. *Utah Ass'n of Cntys.*, 255 F.3d at 1254 (citing *Coal. of Arizona*, 100 F.3d at 844 ("[T]he stare decisis effect of the district court's judgment is sufficient impairment for intervention [purposes]"). Because the relief sought by Petitioner could dismantle protections Proposed Intervenor-Respondents rely on to safeguard public health and environmental integrity, the Court finds that the minimal burden of showing possible impairment to their legal interests is met.

> D. *Proposed Intervenor-Respondents have shown their asserted interest is not adequately protected by the existing parties.*

Under Rule 24(a)(2), Proposed Intervenor-Respondents must demonstrate that their asserted interest is not adequately represented in the litigation. The burden of showing inadequate representation is "minimal." *Zinke*, 877 F.3d at 1168. Accordingly, "the possibility of divergence of interest need not be great in order" for the intervenors to satisfy this element. *Id.*

Courts routinely recognize that government entities, particularly land management agencies like the BLM, must balance competing statutory objectives and public interests, making it inherently difficult for them to represent narrower, more focused private interests. *Utah Ass'n of Cntys.*, 255 F.3d at 1256 ("[T]he government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor."). This structural divergence is especially salient in litigation involving the BLM's implementation of its "multiple use" mandate under the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1702(c), which requires the agency to manage lands for a variety of potentially competing purposes, including recreation, mineral development, and conservation. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 58 (2004); *Zinke*, 877 F.3d at 1169.

Proposed Intervenor-Respondents' core mission—to protect ecosystems, public health, and future generations from the harms of oil and gas development—places them in direct tension with the BLM's statutory obligation to facilitate extractive uses. This divergence creates a real risk that their specific environmental interests will be subordinated or compromised during litigation. As the Tenth Circuit has repeatedly

recognized, it is "on its face impossible" for the government to simultaneously represent both the public's general interest and the particularized interests of a private party seeking to intervene. *WildEarth Guardians*, 604 F.3d at 1200 (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002)).

In addition to the structural divergence of interests, the risk of inadequate representation is heightened by recent and well-documented policy shifts under the current administration. The Tenth Circuit has held that "[a] change in the Administration raises 'the possibility of divergence of interest' or a 'shift' during litigation." *Zinke*, 877 F.3d at 1169. Executive Order No. 14154, titled "Unleashing American Energy," explicitly prioritizes fossil fuel development and directs agencies to roll back environmental regulations—policies that are plainly at odds with Proposed Intervenor Respondents' environmental objectives.[2]

Moreover, Proposed Intervenor-Respondents seek to advance specific regulatory enforcement, including the continued application of the BLM's 2001 Rule requiring prior lessees to remain financially responsible for well plugging and abandonment. ECF No. 35 at 13. Their concern is not merely generalized environmental protection but also targeted accountability for orphaned wells—an issue that the Federal Respondents may not

---

[2] *Compare* Exec. Order No. 14154, 90 Fed. Reg. 8353, 2025 WL 315844 at *8353 (Jan. 29, 2025) (stating that "[i]t is the policy of the United States . . . to encourage energy exploration and production on Federal lands and waters," but "[i]n recent years, burdensome and ideologically motivated regulations have impeded the development of these resources"), *with* Nichols Decl. at ¶ 9 (stating that the Center for Biological Diversity "has long advocated for the rapid phase out of fossil fuels, including the leasing of federal public lands managed by the United States Bureau of Land Management (BLM) for oil and gas production"), *and* Troutman Decl. at ¶ 5 (stating that WildEarth Guardians "works to confront the negative environmental and public health impacts of fossil fuel development and consumption" and "help[s] foster a just and equitable transition away from reliance on fossil fuels").

prioritize, particularly under an administration favoring deregulation. As the Tenth Circuit has held, such differences in policy priorities, especially when tied to Executive Orders or agency discretion, are sufficient to meet Rule 24(a)'s fourth requirement. *See Zinke*, 877 F.3d at 1169.

In sum, Proposed Intervenor-Respondents' narrower, environmentally focused interests diverge both structurally and substantively from the broader mandate and current policy priorities of the Federal Respondents. That divergence readily satisfies the "minimal" burden to show that existing representation *may* be inadequate. Further, as here, where Federal Respondents have made no efforts to defend their position, the Court concludes that Proposed Intervenor-Respondents have met the minimal burden required to show that existing parties cannot adequately protect their asserted interest. Accordingly, the final requirement for intervention as of right is met.

## CONCLUSION

Proposed Intervenor-Respondents' *Motion* satisfies the standards of Rule 24(a) for intervention as a matter of right.

NOW, THEREFORE, IT IS ORDERED Proposed Intervenor-Respondents' *Motion* is GRANTED.[3]

---

[3] Even if Proposed-Intervenor Respondents did not satisfy the test to allow intervention as of right, this Court would grant the *Motion* as to permissive intervention. Rule 24(b) allows for permissive intervention when (1) the motion to intervene is timely made; (2) the movant's claim or defense and the underlying action share a common question of law or fact; and (3) where intervention will not cause undue prejudice or delay to any of the existing parties. FED. R. CIV. P. 24(b). Here, the dispositive issues before the Court, as discussed above, are that (1) Proposed Intervenor-Respondents timely filed their *Motion*; (2) Proposed Intervenor-Respondents have demonstrated that they share common questions of fact and law by seeking to uphold the same rule that Petitioner seeks to vacate; and (3) the delay and prejudice factors are negligible, as evidenced by the lack of subsequent proceedings in the case. That alone is enough for this Court, in its discretion, to grant the *Motion* as to permissive intervention.

IT IS FURTHER ORDERED the Clerk of Court shall amend the caption in this case identifying Western Organization of Resource Councils, Center for Biological Diversity, and WildEarth Guardians as Intervenor-Respondents in this action.

Dated this <u>8th</u> day of August, 2025.

_____
Scott P. Klosterman
United States Magistrate Judge